SAWYER CANAL COMPANY AND HOOKER & CAMPEN CANAL, INC., v. ELIZABETH M. KEYS AND ELIZABETH KEYS ALLEMAN, EXECUTRIX OF ELIZABETH M. KEYS, DECEASED.

(Filed 22 November, 1950.)

**1. Drainage Districts and Corporations § 6—**

In a proceeding by drainage corporations to have lands of respondents assessed for improvements upon allegations that respondents are not members of the corporation but that nevertheless their lands drain into the canals and would be materially benefited by the improvements, *held:* Respondents' contention that the sole remedy of petitioners is under the provisions of G.S. 156-51 to construct dams to prevent water draining from respondents' lands into the canals is untenable, since the provisions of the statute are inapplicable to such proceeding, the statute being applicable solely as a remedy where incorporators fail and refuse to pay assessments duly levied.

**2. Same—**

In this proceeding by drainage corporations to levy assessments against the lands of respondents for the proportionate part of the expense of making necessary improvements upon allegations that such lands drained into the corporations' canals and would be greatly benefited by the improvements, it appeared that respondents' predecessor in title cut a large canal through his lands draining into the lands of the corporation. *Held:* It will be presumed that respondents' predecessor in title acquired the right to cut into the canal of plaintiff pursuant to G.S. 156-10, and the petition should be considered as a motion in that cause for the proper adjudication of the rights of the parties.

APPEAL by plaintiffs from *Bone, J.,* at May Term, 1950, of PAMLICO.

Special proceeding upon petition of petitioners to have the Keys' Hudnell land of defendant assessed for part of expense of enlarging the outlets of plaintiffs' drainways into which defendant drains her said land.

The parties stipulate that the plaintiffs are duly incorporated under Sub-chapter II of Chapter 156 of the General Statutes of North Carolina; that as to the Keys' Hudnell land neither the defendant nor her predecessors in title are, or have been incorporators of either of said corporations; that no part of the Sawyer Canal is located on the Keys' Hudnell land, and no part of plaintiffs' lands drain through the Keys' Hudnell land; that the greater area of the lands of plaintiffs that drain into Sawyer Canal are located nearer the ultimate outlet of the canal than are the lands of defendant; and that defendant owns in the Hudnell tract approximately 1,200 acres, the natural drainage of which does run into the plaintiffs' drainways.

In the petition of petitioners, designated "motion," it is stated: That the petitioners are incorporated drainways created and existing under the drainage laws of the State of North Carolina; that their canals are the natural and only drainways for more than 2,500 acres of fertile lands situate in Nos. 1 and 3 Townships, Pamlico County, North Carolina, and owned and cultivated by fifty different farmers, residing in the said vicinity; that on account of the large volume of water flowing into said canals from the farming lands draining therein it has been determined by the stockholders and directors of said drainways, with the aid and assistance of efficient and competent drainage engineers, that it is necessary for the proper drainage of the lands to enlarge the outlets of said canals from their mouths to a width of 32 feet and depth of 5 feet for a distance of 5,751 feet at a cost of approximately $5,000; that the defendant owns and drains into the Sawyer Canal a large area of fertile farm lands, known as the Hudnell land, containing approximately 1,200 acres, and has refused to contribute anything to the cost of enlarging the outlets of the said canals; and that, as petitioners are informed and believe, the defendant is liable for a part of the expense incurred in providing the proper and necessary outlets for the large volume of water flowing into plaintiffs' drainways from the defendant's lands. Wherefore, petitioners pray the court to appoint commissioners to view the land and determine (1) the number of acres of defendant's land that drain into plaintiffs' drainways, and (2) the amount of expense of enlarging the outlets for said drainways, and (3) that the lands of defendant be assessed for the privilege of draining into plaintiffs' drainways.

Defendant, being notified to appear at certain time and place to show cause, if any she has, why the motion should not be granted, appeared through her attorneys, and objected to the appointment of commissioners

on the ground that she intended to completely dam and prevent the water from her canals or drainways emptying into plaintiffs' canals. And defendant contended, and contends that the only remedy, if any, petitioners have is limited by the provisions of the statute which permits them to block or dam their canals at the border of defendant's land, and thereby dam up the flow of water from defendant's said land of which they complain.

The clerk appointed commissioners as prayed by petitioners. The commissioners reported favorably to petitioners' contentions.

And it is made to appear from the reply of petitioners to the answer of defendant and the duly filed supplemental report of the commissioners, that in the year 1928 Joseph Keys, predecessor in title of defendant, constructed and cut into the Sawyer Canal, a large canal, several miles in length, 20 feet wide and 6 feet deep, for the purpose of draining his land, known as the Hudnell land, and other land owned by him; and that the canal, called the Keys Canal, diverted and turned into plaintiffs' drainways large volumes of water that had never flowed into said drainways prior to the cutting of said canal.

The commissioners find that defendant's said land has been greatly benefited by the recent improvement of plaintiffs' drainways and should bear a reasonable and proportionate part of the expenses of enlarging the outlets of said drainways, and they find in what proportion and amount the lands of defendant are benefited.

The clerk of Superior Court entered an order confirming the report of the commissioners as supplemented, and declared a lien on defendant's land for the amount her land is benefited, as found by the commissioners.

Defendant, having excepted to various orders, and the report and the supplement thereto, excepted to the order of confirmation, and appealed to Superior Court.

The cause came on for hearing in Superior Court, upon the exceptions of defendant to the said order of the clerk, and "the court being of the opinion that the plaintiffs are not entitled to the remedy they seek in this action, to wit, assessment of the defendant's lands," sustained the said exceptions of defendant, and entered judgment reversing the order of the clerk of Superior Court, and declaring that plaintiffs take nothing against defendant by reason of this action, etc.

Plaintiffs appeal therefrom to Supreme Court, and assign error.

*Z. V. Rawls for plaintiffs, appellants.*
*R. E. Whitehurst for defendant, appellee.*

WINBORNE, J. Apparently the ruling of the trial court assigned as error on this appeal is predicated upon the provisions of G.S. 156-51, prescribing the penalty for nonpayment of drainage assessments.

This statute provides that "whenever any person whose lands have been adjudged liable to contribute to the maintenance or repair of such canal shall fail or refuse to pay the amount assessed against his land for such maintenance or repair for thirty days after such payment has been demanded by the company, then the company may give such person notice in writing of its intention to cut off his right of drainage into the canal, and if such person shall still neglect and refuse to pay such assessment for thirty days after such notice, then the company may proceed to so obstruct and dam up the ditches of such delinquent as will effectually prevent his draining into the canal."

But this statute is inapplicable to the factual situation in hand. Sub-chapter II of Chapter 156 of the General Statutes, entitled "Drainage by Corporation," prescribes in Article 3, comprising Sections G.S. 156-37 through G.S. 156-43, the "manner of organization" of corporations for the construction of canals. And in Article 4, comprising Sections G.S. 156-44 through G.S. 156-53, and including Section G.S. 156-51, the "Rights and Liabilities in the Corporation," are defined. And in Section G.S. 156-51, the penalty relates to obstruction and damming of "ditches" that drain into the canal. Thus it seems clear that the provisions of G.S. 156-51 relate only to stockholders in the corporation so formed.

In the case in hand it is stipulated that neither the defendant nor her predecessors in title are, or were stockholders in the plaintiff corporations which were organized under Sub-chapter II of Chapter 156 of the General Statutes. Hence the provisions of G.S. 156-51 are unavailing to her.

On the other hand, Sub-chapter I of Chapter 156 of the General Statutes of North Carolina entitled "Drainage by Individual Owners," comprising Section G.S. 156-1 through G.S. 156-15, authorizes, and prescribes the procedure for, "any person owning pocosin, swamp, or flat lands, or owning lowlands subject to inundation, which cannot be conveniently drained or embanked so as to drain off or dam out the water from such lands, except by cutting a canal or ditch, or erecting a dam through or upon the lands of other persons," to apply for, and to obtain the right to cut such canal or ditch, or to erect such dam. The statute provides for the appointment of commissioners, G.S. 156-2, prescribes the duty of the commissioners, G.S. 156-3, and requires report and confirmation of report of commissioners, by which easement is acquired. G.S. 156-4.

And in Section G.S. 156-10 the privilege of cutting into and draining through canal or ditch of another is granted, and the procedure for acquiring such privilege is prescribed. This section of the statute reads in pertinent part: "Any person desirous of draining into the canal or ditch of another person as an outlet may do so in the manner hereinbefore provided . . . And the privilege of cutting into such canal or ditch may be granted under the same rules and upon the same conditions and re-

strictions as are provided in respect to cutting the first canal or ditch . . . Provided, that any party to the proceeding may appeal from the judgment of the court rendered under this Section to the Superior Court of the county at term time, where a trial and determination of all issues raised in the pleadings shall be had as in other cases before a judge and jury."

And the statute, in Section G.S. 156-11, declares that, "Besides the damages which the commissioners may assess against the petitioner for the privilege of cutting into such canal or ditch, they shall assess and apportion the labor which the petitioner and defendants shall severally contribute towards repairing the canal or ditch into or through which the petitioner drains the water from his lands, and report the same to court, which, when confirmed, shall stand as a judgment of the court against each of the parties, his executors and administrators, heirs and assigns."

And provision is made in G.S. 156-12 for notice of making repairs, and in G.S. 156-13 for judgment against owner in default for the value of his proportionate share of work and labor, "which judgment shall be a lien upon the lands from the date of the performance of the work."

Also it is provided in G.S. 156-14 that "all persons to whom may descend, or who may otherwise own or occupy lands drained by any canal or ditch, for the privilege of cutting which any labor for repairing is assessed, shall contribute the same, and shall be bound therefor to all intents and purposes, and in the same manner and by the same judgment as the original party himself would be if he occupied the land."

In the light of these provisions, it may be assumed that, since there was litigation in respect thereto, Joseph Keys, the predecessor in title of defendant, in exercising the right to cut into the canals of plaintiff, did so under, and pursuant to the provisions of the statute granting such right. G.S. 156-10. And if Joseph Keys did not initiate such proceeding, it may be assumed that the assessment of damages in the litigation to which reference is made in the record was made under the provisions of the statute.

Nevertheless, the record and case on appeal fail to show the proceeding, or the report of commissioners, or that commissioners assessed and apportioned the labor which he, the said Joseph Keys, should contribute toward repairing the canal into or through which he drained the water from his land. Hence it seems expedient that the cause be remanded for the ascertainment of the facts in these respects. And if it should appear either that in the proceedings had no commissioners were appointed in accordance with the statute, or that commissioners were appointed and failed to assess and apportion the labor which Joseph Keys should contribute, as aforesaid, the petition filed by the petitioners in the proceeding

in hand may be considered a motion in the cause,—and the rights of the parties determined in accordance with law and justice.

Error and remanded.